IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ASHLEY DAWN CHESMORE, | Cause No. CV 21-49-BLG-SPW-TJC |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| CPS; SCOTT. D. TWITO; SCOTT J. PEDERSON; AUSTIN KNUDSEN; KATIE F. SCHULZ; MICHAEL P. SINKS, | |
| Defendants. | |

Plaintiff Chesmore filed this action on May 4, 2021.  She challenges the termination of her parental rights by a court of the State of Montana.  *See* Compl. (Doc. 2) at 1.  At the time she filed, Chesmore was a federal prisoner proceeding pro se.

On June 23, 2021, the Court explained that Chesmore's complaint failed to state a claim in most respects but gave her an opportunity to amend it by alleging additional facts.  She responded to the order on September 22, 2021, and has since been released from custody.

1

## I.  Screening

Because Chesmore was a prisoner at the time she filed the complaint and is proceeding in forma pauperis, the Court must review the complaint to determine whether it fails to state a claim on which relief may be granted.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(a), (b)(1).  A federal court must liberally construe pleadings filed by unrepresented prisoners and extend an opportunity to amend where appropriate.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).  Nonetheless, the Court must dismiss a claim when its defects cannot be cured by amendment.  *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).

## II.  Chesmore's Allegations

Chesmore's complaint alleged that her civil rights were violated because she was not permitted to be present for hearings regarding her children.  She stated that her attorney, Defendant Sinks, did not answer her calls or letters and failed to help her regain her parental rights.  She also asserted that the County Attorney, Defendant Twito, gave false information and the Attorney General and Assistant Attorney General, Knudsen and Schulz, respectively, did not conduct an accurate review of the case file to confirm the accuracy of the information presented.

2

Chesmore stated that she filed guardianship papers, but they were not considered before her parental rights were terminated. She also named "CPS" and a deputy county attorney, Defendant Pederson, but did not make any allegations against them. *See* Compl. (Doc. 2) at 3 ¶ III. For her relief, Chesmore sought restoration of her parental rights. She also asked "to be left alone by the State of Montana [Department of Public Health and Human Services]." *Id*. ¶ IV.

The Court explained that it would not restore Chesmore's parental rights or require the State to "leave her alone." But it appeared she might state a claim supporting relief if she was deprived of adequate notice and/or an opportunity to be heard before her parental rights were terminated. The Court explained the nature of additional facts that would be relevant. *See* Order (Doc. 4) at 3–4.

Chesmore was unable to supply a copy of the Montana Supreme Court's decision of her appeal with her response to the Order. *See* Resp. to Order (Doc. 10) at 5. With the additional information she provided, however, the Court was able to locate it. *See In the Matter of D.A.D., M.J.D., and C.M.D.*, 478 P.3d 809 (Mont. 2021). The opinion clarifies the course of the proceedings in state court.

Counsel Kevin Sweeney represented Chesmore in the state district court. *See* Resp. to Order (Doc. 10) at 2. After the State petitioned in August 2019 to

3

terminate her rights, Chesmore moved to dismiss the petition on the grounds that she had "sought and secured family to care for her children . . . during her incarceration." *See Matter of D.A.D.*, 478 P.3d at 812 ¶¶ 6–7. She also contested the State's evidence. *See id*. ¶ 7. A hearing on the termination petition was held on January 2, 2020, four months after the petition's filing. Chesmore testified, as did several other witnesses. *See id*. at 812–13 ¶¶ 9–11.

On appeal, represented by appellate counsel Defendant Sinks, *see id*. at 4, Chesmore asserted that Sweeney provided ineffective assistance in violation of her state-created right to counsel. *See Matter of D.A.D.*, 478 P.3d at 813–14 ¶¶ 14–15; *see also In re A.S.*, 87 P.3d 408, 411–13 ¶¶ 12–20 (Mont. 2004). She claimed that counsel should not have conceded that she "had subjected the children to 'chronic, severe neglect'" under the controlling statute, and that he should have challenged the district court's finding to that effect because it had "hardly any support in the record." *Matter of D.A.D.*, 478 P.3d at 813 ¶ 14.

In her response to this Court's order, Chesmore asserts that the state district judge "ignored" the guardianship paperwork she prepared and filed with her family's help, *see* Resp. to Order (Doc. 10) at 3; that she could have "objected to the decisions" and "show[n] more evidence," *id*., and corrected misinformation

about one of the three occasions her children had been removed from her care, *id*. at 5–6, if she had been able to participate in more hearings; that her family members were unable to obtain custody of her daughter, *id*. at 4; that appellate counsel Sinks failed to communicate with her, *id*. at 5; and that "the lower courts and DPHHS (CPS) violated our Family Preservation right by not keeping the children together and with family," *id*.

### III.  Analysis

Chesmore filed her complaint under 42 U.S.C. § 1983.  *See* Compl. (Doc. 2) at 1, 3 ¶ III.  The complaint implicates federal-question jurisdiction.  *See* 28 U.S.C. § 1331; *see also, e.g.*, *Atwood v. Fort Peck Tribal Court*, 513 F.3d 943, 947 (9th Cir. 2008); *see also, e.g.*, *Deem v. DiMella-Deem*, 941 F.3d 618, 623 (2d Cir. 2019).

### A.  Notice and Opportunity to Be Heard

As the Court explained in the Order of June 23 (Doc. 4 at 3–4), if Chesmore could show that she was deprived of adequate notice and/or an opportunity to be heard before her parental rights were terminated, she might state a claim on which relief could be granted.  Clarifying that point, the Montana Supreme Court's opinion demonstrates that Chesmore was not deprived of due process. *See Matter*

5

*of D.A.D.*, 478 P.3d at 810–13, ¶¶ 2–12.

### B. *Rooker-Feldman* Doctrine

When a plaintiff asserts a claim arising from a state court proceeding that has concluded, the federal court must ask whether she is, in effect, asking it to overrule or vacate the state court's judgment—or, in other words, taking a *de facto* appeal. This question arises because a federal district court has no appellate jurisdiction over a state court.  Only the United States Supreme Court exercises appellate jurisdiction over state courts' judgments.  *See* 28 U.S.C. §§ 1257(a), 1331.  The Supreme Court has therefore developed a doctrine, named after two cases called *Rooker* and *Feldman*, to determine when a litigant is taking an unauthorized appeal by calling it a lawsuit.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983).

Because the *Rooker-Feldman* doctrine goes to a federal court's subject-matter jurisdiction, the Court not only may but must raise it *sua sponte*.  *See* Fed. R. Civ. P. 12(h)(3); *Worldwide Church of God v. McNair*, 805 F.2d 888, 890–91 (9th Cir. 1986).  *Rooker-Feldman* applies to cases brought by parties who lost a case in state court, and who "complain[] of injuries caused by state-court *judgments*

rendered *before* the [federal] district court proceedings commenced and inviting [federal] district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus., Inc.*, 544 U.S. 280, 284 (2005) (emphases added). *Rooker-Feldman* does not apply to federal actions commenced while state court actions are pending, even if the state court enters judgment before the federal action is resolved. *See id.* at 292.

The Ninth Circuit Court of Appeals has yet to develop a specific test under *Rooker-Feldman*, but three facets of Chesmore's pleadings clarify that her case is, in large part, barred. First, Chesmore complains of her loss in state court, and she filed her federal lawsuit after the state court proceedings concluded. The Montana Supreme Court issued its decision on January 5, 2021. Time to file a petition for rehearing expired on January 20, 2021. *See* Mont. R. App. P. 20(2)(a). As no petition was filed, the court's decision became final on that day. Chesmore filed her federal lawsuit on April 7, 2021. *See* Compl. (Doc. 2) at 3; *Houston v. Lack*, 487 U.S. 266, 270 (1988). Thus, the state court proceedings were final before the federal proceeding commenced. *See Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 604 n.1 (9th Cir. 2005); *see also, e.g.*, *Nicholson v. Shafe*, 558 F.3d 1266, 1279 (11th Cir. 2009).

Second, Chesmore "directly challenge[s] [the] state court's factual or legal conclusion," *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1030 (9th Cir. 2005), and "complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003). Chesmore asserts the state court's judgment "separated all three (3) of my children causing more emotional damage to them," Resp. to Order (Doc. 10) at 3, and "violated our Family Preservation right by not keeping the children together and with family," *id*. at 5. She, therefore, asks this Court to undo the state court's decision by restoring her parental rights. *See* Compl. (Doc. 2) at 3 ¶ 4; *see also Rooker*, 263 U.S. at 414.

Third, the doctrine applies if the plaintiff complains of an injury *caused by* an allegedly erroneous judgment of a state court. *See Noel*, 341 F.3d at 1163–65 (9th Cir. 2003) (discussing *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728–29 (7th Cir. 1993)). As *Noel* explains, a forbidden *de facto* appeal arises if a federal plaintiff complains of "harm caused by a state court judgment that directly withholds a benefit from (or imposes a detriment on) the federal plaintiff, based on an allegedly erroneous ruling by that court." *Noel*, 341 F.3d at 1163. As stated above, that is what Chesmore alleges: erroneous termination of her parental rights.

8

For these reasons, Chesmore's request that this Court return custody of her children to her is barred by the *Rooker-Feldman* doctrine.

## C. Collateral Estoppel

To the extent Chesmore's claims against Defendants CPS,[1] Twito, Pederson, Knudsen, and Schulz are not barred by *Rooker-Feldman*, another judicial doctrine is relevant. The doctrine of collateral estoppel "embodies a judicial policy that favors finality to litigation" and "prevent[s] parties from incessantly waging piecemeal, collateral attacks against judgments." *Brishka v. Dep't of Transportation*, 487 P.3d 771, 775 ¶ 11 (Mont. 2021) (internal quotation marks and citation omitted). It does so by preventing "relitigation of determinative facts that were actually or necessarily decided in a prior action." *Baltrusch v. Baltrusch*, 130 P.3d 1267, 1276 ¶ 25 (Mont. 2006).

Collateral estoppel applies when:

(1) an identical issue raised [in the current litigation] was previously decided in a prior adjudication; (2) a final judgment on the merits was issued in the prior adjudication; (3) the party against whom collateral estoppel is asserted was a party . . . in the prior adjudication; and (4) the party against whom issue preclusion is asserted was afforded a full and fair opportunity to litigate any issues that may be barred.

---

[1] Child Protective Services might be an arm of the State and immune from suit. *See, e.g.*, *Sato v. Orange County Dep't of Education*, 861 F.3d 923, 928 (9th Cir. 2017); *Costanich v. Dep't of Soc. and Health Servs.*, 627 F.3d 1101, 1103 & n.1 (9th Cir. 2010). For present purposes, the Court need not decide the issue.

*Brishka*, 487 P.3d at 775 ¶ 11 (quoting *Baltrusch*, 130 P.3d at 1274 ¶ 18).  All four

of these factors are squarely met here.

The state courts' judgments terminating Chesmore's parental rights and

awarding custody depend upon their findings of fact.  These facts include the state

courts' views of the reason for and importance of previous custody actions

involving Chesmore and her children; the finding that each child would fare better

living in a different house than the others; and the finding that Chesmore's proposed

guardianship arrangement put her interests above the children's best interests.  *See*

*Matter of D.A.D.*, 478 P.3d at 813 ¶ 12, 814–15 ¶¶ 17–18.

Chesmore is not entitled to another attempt to prove those findings wrong.

Because she cannot pursue claims that require her to dispute or contradict facts

necessarily found in the state proceedings, she cannot prove claims against

Defendants CPS,[2] Twito, Pederson, Knudsen, or Schulz arising from actions they

took or omitted or information they did or did not present in the state proceedings.

/ / /

---

[2] Child Protective Services might be an arm of the State and immune from suit. *See, e.g.*, *Sato v. Orange County Dep't of Education*, 861 F.3d 923, 928 (9th Cir. 2017); *Costanich v. Dep't of Soc. and Health Servs.*, 627 F.3d 1101, 1103 & n.1 (9th Cir. 2010).  For present purposes, the Court need not decide the issue.

10

### D.  Defendant Sinks

*Rooker-Feldman* and collateral estoppel foreclose all of Chesmore's allegations except those against Defendant Sinks for failing to keep in contact with her.  He represented Chesmore in her appeal to the Montana Supreme Court. Unlike the conduct of Chesmore's attorney in the district court, Sinks' conduct was not and could not be a subject of the appellate litigation.  Chesmore did not have an opportunity to challenge his conduct while he was representing her.

But Chesmore cannot state a federal claim against Defendant Sinks.  Sinks' statutory function in the state proceedings—regardless of whether he fulfilled it— was not to benefit the State but to act on Chesmore's behalf.  Therefore, similar to a public defender representing a criminal defendant or a court-appointed guardian representing the interests of children, Sinks did not "under color of state law" and so cannot be liable under 42 U.S.C. § 1983.  *See Polk County v. Dodson*, 454 U.S. 312, 324–25 (1981); *Kirtley v. Rainey*, 326 F.3d 1088, 1093–96 (9th Cir. 2003).

### E.  Supplemental Jurisdiction

To the extent Chesmore intended to state claims under Montana law, the Court should decline supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c)(3).

/ / /

11

### IV.  Conclusion and Certification

Chesmore fails to state a claim on which relief may be granted.  The state court's proceedings cannot be relitigated in this Court, and the course of those proceedings demonstrates that she was represented by counsel and able to participate as fully as her incarceration status permitted.  To the extent Chesmore wishes to regain custody of her children, *see* Resp. to Order at 6, she cannot do so through this action.

Chesmore seeks to overturn a state judgment and cannot proceed against the attorney who represented her in her appeal to the Montana Supreme Court.  The law simply does not support her claims.  The District Court should certify that any appeal from this disposition would not be taken in good faith.  *See* Fed. R. App. P. 24(a)(3)(A), (4)(B).

Accordingly, the Court RECOMMENDS:

1.  The complaint (Docs. 2, 10) should be DISMISSED without further leave to amend for failure to state a claim on which relief can be granted.

2.  The clerk should be directed to enter, by separate document, a judgment of dismissal with prejudice.

3.  The District Court should CERTIFY, pursuant to Fed. R. App. P.

24(a)(4)(B), that any appeal of its disposition would not be taken in good faith.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Chesmore may object to the Findings and Recommendation within 14 days. *See* 28 U.S.C. § 636(b)(1).[3]  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Chesmore must immediately advise the Court of any change in her mailing address</u> by filing a Notice of Change of Address.  Failure to do so may result in dismissal of this action without notice to her.

DATED this 18th day of April, 2022.

*/s/ Timothy J. Cavan*
Timothy J. Cavan
United States Magistrate Judge

---

[3] This deadline allows a party to act within 14 days after the Findings and Recommendation is "served."  Federal Rule of Civil Procedure 6(d) allows three additional days after the period would otherwise expire.

13